is number 23-13970 State Farm Mutual Automobile Insurance Company et al. versus Michael Thomas LaRocca et al. Mr. Smith, whenever you're ready. Thank you, your honor, and may it please the court. Florida had a massive problem with fraud and kickback schemes at its medical clinics. In response, the legislature enacted the Health Care Clinic Act to strengthen the regulations of those clinics. Under the act, clinics can either apply for a license and submit themselves to regulatory oversight, or they can satisfy the requirements of an exemption. In this case, Dr. LaRocca's clinics claimed an exemption that required them at all times to be wholly owned by a licensed practitioner who is supervising the business activities and is legally responsible for the clinic's compliance with all federal and state laws. And yet at the same time he was claiming this exemption, Dr. LaRocca was orchestrating a massive kickback scheme. He employed a team of marketers. Wait, let's stop for a second. This case went to trial. It did go to trial, your honor. And my understanding of the record is that at trial, State Farm abandoned a couple of its theories. It abandoned the kickback theory and the patient referral theories and just proceeded on the medically unnecessary medical necessity theory. Is my understanding correct? Slightly correct, your honor. I need to correct that. Tell me what you did at trial. So I want to talk about what preceded trial because it sets up what happened. No, no. I know what preceded trial. We can talk about that later. I want to know at trial. I want to make sure my understanding of what happened at trial is correct. Yes. In your complaint, you alleged that Mr. LaRocca and his clinics had engaged in a series of violations of federal and state law, right? Yes. Okay. At trial, my understanding is you abandoned some of those theories and chose to go forward with only some of those theories. Tell me what you chose to do at trial. Yes. At trial, we had a claim by claim theory. So we at trial set out to prove that on a claim by claim basis, the claims were not medically necessary. We did not attempt to prove at trial that each claim was procured by a kickback theory. That being said, prior to trial, we had two overarching theories. We had this direct theory and we had the clinic DAC theory. That's what was on summary judgment as I understand it. That's correct, Judge Schovane. That was on summary judgment. And the court rejected it? Yes. The court not only denied our motion for summary judgment, but on reconsideration, we sought clarification. Well, it denied it on a legal question. Yes, that's correct. As opposed to the facts. That's correct, Your Honor. It rejected it on the basis that it declined to enforce any requirement for the specific provision of the wholly owned exemption. And so it not only denied our motion. That's an overstatement of what the district court ruled. It didn't enforce it the way you wanted it enforced. It didn't say it didn't have any probative value or legal effect. It just didn't enforce it the way you thought should have been enforced. That's fair, Your Honor. I think my only quibble there is that I didn't read the district court as elucidating the meaning of that language. It said that we were wrong, but the district court didn't give its own affirmative. Let me give you a hypothetical. The hypothetical is not this case, okay? A clinic owner who meets all of the statutory requirements for being a clinic owner who gets the exemption, okay? That person runs wholly owned 30 clinics throughout the state of Florida. They see hundreds of thousands of patients a year. One billing technician decides, just for the hell of it, to upcode one claim. The claim gets upcoded. It should have been billed at code X at $20 and it gets billed at code Y at $35. The claim gets paid because nobody notices it. Is the exemption gone? No, not at all, Your Honor. Why? Because we interpret the exemption as... That's a violation. It is a violation of the underlying statute, right? And the clinic owner has, through the clinics, violated law. That's correct, Your Honor, but the exemption itself doesn't require perfect compliance with the law. What does it require? It requires legal responsibility for the entity's compliance. What does that mean? It means a duty. And the duty to do what? You're using very, very broad terms. I will. I'll illustrate. So if you have 95% compliance, is that good enough? It might be, yes, Your Honor. If you have 99% compliance, is that good enough? It might be, yes. So you can't tell. There's no line. No, I think... It all depends on the facts of the case. I think so. Let me illustrate it this way because this court's decision in VIZK actually focused on similarly worded language under the Clinic Act. So in VIZK, this court considered the related phrase legal responsibility for. Under the Clinic Act, if a clinic is a licensed clinic, it has to hire a director who has legal responsibility for certain enumerated duties. And I take five takeaways from VIZK, and they're all relevant to this case. The first is that this court said that when the Clinic Act uses the phrase legal responsibility for, it means carrying out a duty. That's what this court said. It said carrying out the obligations enumerated under the Act. Second, it rejected an argument that responsibility meant that liability was imposed on the clinical director. It held the clinic itself liable for the director's failure to exercise legal responsibility for those duties. Third, and this is I think the key and the distinction between violating the underlying statute and what's at issue here, it focused on the director's actions in that case. So the director's legal responsibility was for systematically reviewing bills. And what the court said in focusing on that director's conduct is that she didn't satisfy that standard because she reviewed five bills a month, she didn't have any system or methodology, and then the fourth aspect of the case is that it looked at the consequences of her actions. So that's where I think the underlying violations are relevant. There was testimony in that case that unlawful bills were going out the door left and right. So the court could know that she wasn't exercising her legal responsibility for systematically reviewing the bills. The last point about VIZK, which addresses your line drawing example, Your Honor, is that this court said, we don't have to define the bare minimum of what is systematically reviewing the bills because in this case, there was no effort to comply or even substantially comply with the requirement of systematic review. VIZK is a very different case in terms of what the statute's language was and what was trying to be accomplished in those cases. Because here, you're not trying to argue that for all of the claims that were tainted by kickbacks, there should be no responsibility on State Farm. You're not arguing that for all of the claims on which there were some other violations, there should be the patient brokering act, for example, that there should be no payment or obligation on the part of State Farm. You're not arguing that because there were some claims that were medically unnecessary, those claims should not be paid by State Farm. Your claim is that it absolves you of payment for everything, even the claims that were not tainted by kickbacks, even the claims that were not tainted by being medically unnecessary and so forth and so on. That's a very broad reading of the statutory language. I don't see it that way, Your Honor, and here's why. How do you see it? I see it as- What are you trying to, what is State Farm trying to avoid here? It's trying to avoid paying for bills when a clinic is not satisfying its exemption, which is on all fours with the- Which means, I mean, you're using different language and I appreciate that, but you're trying to avoid legal responsibility for all of the clinic's work. That's correct. Not just the specific claims or transactions that were tainted by violations or irregularities, right? That's correct, Your Honor, and what the statute says is that regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, when a clinic is operating without a license or in violation of the statute, its charges are unlawful, non-compensable, and unenforceable. And so here, the system that was set up was meant to impose some level of oversight on these clinics. As I said, there was a history of massive fraud and kickback schemes at these medical clinics. So you can go one way, apply for a license and submit to regulatory oversight and have a director who is taking legal responsibility for enumerated duties, including systematic reviews of billing to ensure that they're unlawful, or you can have an owner who has legal responsibility for the compliance function of that clinic. And so it is just that this elaborate and substantially lengthy kickback scheme demonstrated that this particular owner was not legally responsible for the compliance function of the clinic. And that was for a significant period of time, both before we brought our claims and prevailing afterwards. The record is replete with evidence that Dr. LaRocca paid $3 million for approximately 30 marketers. He judged their referrals on whether or not they were, or excuse me, judged their performance based on whether or not they were bringing referrals in the door and fired them if they did not. Gave them company credit cards, which they racked up $850,000 in gifts. And those included cruise tickets, luxury goods, spa treatments, dinners at high-end restaurants, sports and entertainment tickets. And there was no explanation offered in the record that would detract from that showing. So I think under these facts, we have certainly demonstrated a, I guess, a material issue of fact and dispute. But I would go beyond that in saying that the record... If you prevail, then what do we do? Reverse the district court's legal ruling and send it back for a trial? I think there's three options this court has. One could be outright reverse. But this court is a court of review, of course, and not first view. So the second option would be vacate and remand for the district court to reconsider the record on summary judgment under the proper standard. And the third, which the other side concedes that if we're right on the gating issue of the law, is to vacate and remand for trial. But under the facts as we've established, I don't think that you can view this as being legally responsible for the clinic's compliance with the law. One more procedural question before you run out of time. Given what I think is a pretty important legal question and the lack of any on-point authority from any Florida court, should we consider certifying this to the Florida Supreme Court? Absolutely, you can consider that. We did float that in our briefs, and we have no objection to it. I guess your argument is it doesn't need to be certified, because it's pretty clear. I think the statutory text is clear. That's reading of the statute. Yes, I think the statute is clear, and that legal responsibility, as this court explained in Vizcay, as dictionaries have defined that term, particularly when it's paired with the word for, it's undertaking a duty. And in this case, Dr. LaRocca did not undertake that duty of compliance. Thank you. All right, thank you very much. You've got your time to save for rebuttal. May it please the court, my name is John Goldsmith from the Trenum Law Firm with my partner, Patrick Causey. We represent the appellees who are chiropractors, medical doctors, and medical clinics who treat patients that have been injured in automobile accidents. The first thing at the outset is, as Judge Jordan, you pointed out, Safe Arm is asking his court to reverse an order denying summary judgment and denying a reconsideration of that order on a theory of liability that State Farm affirmatively, and on the record, abandoned. So specifically, State Farm, and I quote State Farm's lawyer, Mr. Silverman, at the final pretrial, abandoned the open quotes, the theory of liability that the claims weren't owed because he paid kickbacks or engaged in paycheck brokering. We've made a decision. The decision is we are not going forward on those direct kickback and paycheck brokering theories. Close quotes. As a matter of fact, Judge Bucklew expressed surprise at Safe Arm's decision and said, you can still go forward with your direct kick, anti-kickback and paycheck brokering claims, but State Farm stated unequivocally that it was not going forward on those claims. And now, State Farm is asking this court, and is seeking appellate review of claims, that it affirmatively, and on the record, abandoned. Did State Farm... At summary judgment, did you challenge the factual, the factual, not the legal, underpinnings... We did. ...of State Farm, hold on, of State Farm's summary judgment motion? We did, and not only did we do that... What evidence did you present about the evidence... I'll give you an example. ...on their side with regards to the marketers and the credit cards and the fees and everything else? Yeah, and I'll tell you what that is, but the first thing I'll note is, Judge Bucklew, at a subsequent hearing, said I would have denied summary judgment because there are clearly factual issues in dispute, even if I accepted State Farm's theory. But for example... I know, but the summary judgment order on review doesn't say that. It doesn't say that, but at the subsequent... As a matter of fact, it's a pretty short order because it doesn't really go into any of the factual disputes by the parties. It does not, but at the subsequent hearing, Dock at 522, Judge Bucklew specifically says she found factual issues. But I'll give the court some examples. So they say, oh, well, they bought a cruise. Well, they opened a new office. They had a grand opening, and they had a raffle for a cruise. They invited people from the community to come in. So there's an example of that. And when they talk about the number, the dollar amount that was spent, these involved 12 clinics over a large number of years. And if you do the math, it's about $50,000 per clinic per year. So that doesn't mean it's not... It doesn't mean that's correct. But State Farm did not present one case, any evidence that any gift that was made when they brought coffee and donuts to an office, that it resulted in or was done because of a gift. They presented no evidence of that whatsoever. I haven't taken a deep dive into this record, but they allege more than coffee and donuts. They do allege more than coffee and donuts, but they don't allege... But what they allege for every single fact that they alleged, we set forth evidence in the record to show that it was not true. So for example... So what about the credit cards being used for luxury and frivolous other items? So there was evidence of that. And the evidence that was put in the record is that... So for example, there was nail salons. And that was where a marketer charged it for herself personally. And then the clinic discovered it and said, you need to reimburse this. And they did. How about the things that were a little bit more expensive than a nail salon? Well, I gave the example of a cruise, but there were... But for example, I think there might've been a gift card for Burns or something. But again, that was a grand opening. They did a raffle. What was the evidence on your side about why the marketers were paid certain amounts of money? The marketers' pay varied because they were 1099 contractors and they were paid on an hourly basis. And so some... Some of them are... To do what? To make the LaRocca clinics front of mind. That was a purpose. So that they will be known in the community. That's the purpose of it. And the evidence in the record is, for example, that urgent care clinics, they would have the cards of a number of different places where people could get treated for automobile accidents because urgent care centers don't treat people for automobile accidents. They refer them out. Same thing for primary care doctors. They get referred out and they would typically give them two or three cards. The idea is to keep them front of mind, but that's not a kickback. The point is, if State Farm thought they had evidence, they could have presented at a trial. They had the right to go to trial and to have presented evidence. And in fact, they did present that evidence in trial. Extensive evidence. Dr. LaRocca was cross-examined on it. His son, Blake LaRocca, was examined on this. And they also put on the head marketer. And she was on the stand for many hours. And they brought that testimony in saying, this is evidence of an overall scheme which shows that the medical services were not medically necessary. And the jury rejected that theory in its entirety. So they did present the evidence at trial, but they withdrew their theory of liability. If the evidence in a hypothetical case shows that a clinic is billing 90% of its work for medically unnecessary services, purely medically unnecessary services, and an insurer like State Farm argues that that clinic has lost its exemption because the clinic director was involved, knew what was going on, wasn't doing what he or she was supposed to do, et cetera. Does that taint the other 10% that was valid? Under the statute, no, it does not. 99%. The answer is no, but it taints 99%. It was at least as great that both of you have extreme positions. So that's good. It's either one end of the pendulum or the other. But Your Honor- For you, no matter how egregious the violation, the exemption isn't lost. Well, what I'm saying is- For State Farm, they can be lost. Yeah, but the argument, I think, Your Honor, is this. The point is that they went to trial and they did not present one case that was medically unnecessary. There was 1,049 patients received more than 20,000 treatments over a period of a number of years, and they had charts they presented supposedly showing the services were medically unnecessary. The jury rejected all of it. Every single claim that there was any medically unnecessary treatment. So in this case, the point is that the jury rejected that. And I think what's important here is that the State Farm summary judgment motion argued that the Florida Clinic Act exempts a medical clinic from obtaining a clinic license if it is wholly owned by a professional, a medical professional, who among other requirements is, quote, legally responsible for the clinic complying with all state and federal laws, unquote. Legally responsible, and we cite Black's Law Dictionary, we cite other for the authority that legally responsible means you're accountable. And by being accountable, that means Dr. LaRocca, who applied for and received a certification that he met the wholly owned exemption. And in order to get that certificate, he had to sign a statement saying, I agree that I will be legally responsible for the clinic complying with all state and federal law. So he can't hide behind the corporate formalities. He could be personally liable. That's what that language, legally responsible, means. It's the only thing it can mean in that situation. They cite the Vizcay decision, and the Vizcay decision, as you pointed out, is very different. It relates to the medical director's duties, not the wholly owned exemption. And Vizcay determined that a clinic was liable for omissions of its medical director or clinic director based on a statute which requires the medical director or clinic director to conduct systematic reviews of clinic billings to ensure the billings are not fraudulent or unlawful. So the word ensure is used in that part of the statute, but it's not used in the wholly owned provision of the statute. So in the same statute, it uses insured in one part, but with regard to our part that we're looking at here, the wholly owned provision, it does not. Now, why doesn't it do that? It doesn't do that because the clinic owner is held accountable or liable for any violations of the statute. And in fact, that's what State Farm did. They sued Dr. LaRocca individually because he was legally responsible for the actions of the clinic and they sought to hold him personally liable for those violations. So this is not similar language in the wholly owned provision in the statute. Should we refer this to the Florida Supreme Court? You could refer it to the Florida Supreme Court. I know we can. Yes. Should we? I think that this language is very clear and straightforward and that it's not necessary, but certainly... They also think it's straightforward. They also think it's straightforward. But you don't agree. That's right, because the language says legal responsibility and legal responsibility, and we've cited the authorities for the proposition, means to be held accountable for. And Dr. LaRocca signed a certificate, got an exemption from the Agency for Healthcare Administration saying, you are exempt from the licensure requirement because you agreed that you would be legally responsible for compliance with all state and federal law. But State Farm, their interpretation of the statute is that they have to be liable for all state and federal laws. We cite a number of examples in our brief that if they held a grand opening and they released 10 balloons into the air... Is it your argument that in all cases it only works piecemeal? Well, with regard to this statute... I suppose when you say piecemeal... Yeah. ...separate claims. Yes, you have to prove on... You have to prove on a claim-by-claim basis what you can't... You're still entitled to the exemption. You're still entitled to the exemption. But you have to prove on a claim-by-claim basis that there is a violation... There are separate breaches in effect. That's correct. I mean, you may be able to present evidence. For example, here's what they could have done in this case. They could have taken... They had all of the information because for every patient that came in, we knew who referred it because when you get a referral from a doctor, they're going to say, thank you for referring him. This is what we found when we did the examination, etc., etc. They had those referral logs. They also had information about whatever money was spent in connection with any of these other entities. And they could have compared the two and said, oh, well, gee, here you have all of these... all of these expenditures on these particular dates and then here's where referrals happen. They didn't do that. They could have done that. They could have presented it at trial. They didn't present it to summary judgment. They didn't present it at trial. They spent... They got an extension of the discovery cutoff for four months to get that information. They got that information and there was... If they had the evidence, you would think they would have presented it. They presented none of it. Your position is that violations of federal and or state health laws do not affect the viability of the exemption under this Act, under the Clinic Act? Well, they can certainly go to... They can certainly go to the state. They could go to ACCA and say, this exemption certificate that you issued should not be... should not be retained. They could do that. But the point that I'm making is that... is that unlike the... is that unlike the other... the medical director provisions, the plain language of the medical director provisions does place an affirmative duty on medical directors to comply with very limited requirements. Basically, five provisions of the law. And under those, it specifically says they have to ensure compliance. But in that same statute, it doesn't say that the owner has to ensure compliance. And why? The logical reason is, is because the owner of the clinic is personally liable for any breach by the clinic. You can't ask for better protection than that. But that's the kind of... but that's what's really necessary. And I think what's important is under the anti-kickback statute, you have penalties based on the number of kickbacks you're able to prove. Now, in this case, they proved zero. They had no evidence whatsoever. And their claim is, if there's a kickback relating to a claim by GEICO or an uninsured patient, then that voids all claims. But in this case, they presented no evidence whatsoever of any kickbacks that had any relationship to State Farm or for that matter, any claims. They just presented testimony and evidence with regard to payments that were made. And again, each of those are explained in the record in detail. All right, Mr. Goldsmith. Thank you very much. Thank you. Mr. Smith, this case presents a weird, at least for me, a weird procedural conundrum. We have a general... we had a general rule that you could not... a party could not appeal the denial of a summary judgment motion once there was a trial, that you had to move for Rule 50 relief during and after trial. And if you didn't, you lost the issue on which summary judgment was denied. And the Supreme Court says, you can do it for a purely legal issue. You don't lose that. But here you have a trial that follows and you go forward on one set of theories or more at trial, but you choose not to go forward on other theories at trial. What do we make of all of that? Like, what do we say is left of your case, even if we agree with you? So, there is no abandonment here and I want to be clear on that. And the District Court didn't view it as any kind of abandonment. You're correct. The Supreme Court has held for pure issues of law, such as the denial of summary judgment, those are preserved. You don't have to seek post-trial relief. And I think the record is preserved here. The District Court herself in addressing our motion for a stay of the judgment pending appeal said that we had another theory. I denied summary judgment on that theory and the court said that we had shown a potential likelihood of success on an issue of first impression. And she said, if the plaintiffs prevail in their appeal, they may be afforded the right to retry their case on their licensing theory of liability or be entitled to summary judgment on that theory. So, I can't understand that decision as suggesting that we abandon this licensing theory. I'm not suggesting that. I'm just saying it's a different sort of case. You don't have, usually don't have cases like this that sort of branch off in different directions. Do you agree that, or do you think that the medical necessity theories you try to trial is gone even if you get a reversal on the legal issue here? Yes, that's right. We didn't appeal that aspect of the judgment and so that aspect would be gone. The relief we would seek is essentially vacating the judgment and remanding, I think, at a minimum for the District Court to apply a new legal standard to the summary judgment record. I think that they could go one step forward further and I'm happy to address the fact that they have not created a genuine issue of material fact and dispute here. Well, I don't think it affects our jurisdiction to review the denial of summary judgment on a legal issue, but didn't the District Court indicate that or say at a hearing that it also thought that there were issues of material fact? Yes, the judge said three things though, I want to be clear. On summary judgment, the judge didn't get into the facts as you pointed out. Then at a hearing on the motion for reconsideration said claim fails as a matter of law and in any event, there's disputed facts here. But then the judge said in her stay application, as I just read to the court, they might be able to retry the case or be entitled to summary judgment on that theory. I think the judge didn't focus on the record evidence at all. I think that's a fair takeaway from this case. I do want to address the notion that we're not permitted to pursue a licensing theory in general. This court addressed that in Silver Star. Silver Star is another case we cited in our briefs. There, a clinic didn't satisfy the wholly owned exemption because the owner was not supervising the business activities of the clinic. And so it didn't matter whether or not these were medically necessary treatments or not. It didn't satisfy the exemption and as a result, none of those claims were legally compensable. And the last thing, if I just may briefly summarize, if this statute does impose a vicarious standard of liability, it does it in a very strange way. The Florida legislature consistently uses terms of liability when it means to impose liability on another party. We cite examples in our brief and the Clinic Act itself speaks of imposing liability on an owner or a licensed practitioner in certain situations. Legally responsible is an affirmative duty. This court said so in Vizcay and this court should so declare here. Thank you. Thank you both very much. We're in recess for today.